IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JHEN SCUTELLA, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:19-cv-168 (Erie) |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | RICHARD A. LANZILLO |
| ERIE COUNTY PRISON, et al., | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| Defendants | ) | MEMORANDUM OPINION AND |
| | ) | ORDER ON DEFENDANTS' |
| | ) | MOTION TO DISMISS OR, |
| | ) | ALTERNATIVELY, FOR SUMMARY |
| | ) | JUDGMENT |
| | ) | |
| | ) | ECF NO. 20 |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for Summary Judgment pursuant to Fed. R. Civ.

P. 56. ECF No. 20. For the reasons discussed below, the Court will grant Defendants' motion.[1]

I.      Introduction

Plaintiff, Jhen Scutella (Scutella), acting *pro se*, commenced this civil rights action pursuant to

42 U.S.C. § 1983 against the Erie County Prison ("ECP"), ECP Counselor Amber Chaffee, ECP

Warden Michael Holman, and ECP Deputy Warden Ronald Bryant. Scutella's Amended Complaint,

which is the operative pleading and the subject of Defendants' pending motion, asserts

constitutional claims based upon two grounds: ECP's withdrawing of administrative and service fees

from Scutella's prisoner account, and Defendants' failure to provide him with grievance forms upon

request. *See* ECF No. 11.

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all
proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

Defendants filed their motion to dismiss or for summary judgment, supporting brief, and exhibits on January 28, 2019.  ECF Nos. 20, 21.  On February 4, 2020, the Court entered an Order (ECF No. 23) directing Scutella to respond to Defendants' motion by March 5, 2020.  This Order specifically advised Scutella that the Court may treat Defendants' motion, in whole or in part, as a motion for summary judgment and instructed Scutella regarding procedures under Rule 56 of the Federal Rules of Civil Procedure. On March 13, 2020, Scutella filed what he styled as a "Sur-Reply/Response" in opposition to Defendants' motion.  ECF No. 36.  Scutella's Sur-Reply presented Scutella's arguments in opposition to Defendants' motion and attached an additional exhibit in support of his claims.  *Id.*  Accordingly, this matter has been fully briefed and is ripe for decision.[2]  Having notified Scutella of the potential treatment of Defendants' motion as a motion for summary judgment in accordance with *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010), the Court will analyze Scutella's claims and the record under the Rule 56 standard.

II.      Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.

---

[2] While Defendants' motion was pending, Scutella supplemented the record with the Affidavit of Victor K. Lemmons, Jr.  ECF No. 27.  In his affidavit, Mr. Lemmons recounted his own difficulties obtaining grievance forms while incarcerated in the ECP.  The Court has accepted and considered Mr. Lemmons' affidavit in its determination of Defendants' motion.

1992).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In determining whether a genuine issue of material fact remains for trial, the court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings but must identify evidence that demonstrates the existence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Furthermore, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The moving party may also rely upon the absence of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.    Material Facts

Scutella was committed to the ECP on May 1, 2019.  Upon his arrival, ECP withdrew $50.00 from his prison account and, on May 22, 2019, ECP began withdrawing $10.00 per day for "room and board."  ECF No. 11, ¶¶3-4.  Scutella asked ECP Counselor Amber Chaffee for a grievance form to contest these charges.  He also sought a grievance form to complain about ECP's failure to have such forms readily available.  *Id.*, ¶5.  According to the Amended Complaint, Chaffee advised Scutella that both issues were "non-grievable."  *Id.*  Scutella alleges that these events prompted him

to file the present action. His Amended Complaint asserts that the absence of readily available grievance forms violates his rights under the First Amendment and that the charges against his account constitute cruel and unusual punishment under the Eighth Amendment and subject him to double jeopardy in violation of the Fifth Amendment. Finally, the Amended Complaint also claims that the assessments against his prison account without a predepriavation hearing violate his due process rights under the Fourteenth Amendment. *Id.*, §V

In their motion, supporting brief and exhibits, Defendants identify Erie County Ordinance No. 83, 2014 as the authority pursuant to which the ECP charged "service and administrative fees" against Scutella's prison account. ECF No. 20-2, ¶6. This ordinance has been in effect since 2014 and authorizes such fees, including an initial $50.00 processing fee and a $10.00 per day service or "room and board" fee, to be charged to inmates housed at the ECP. *Id.*; ECF No. 20-4. Upon his commitment to the ECP, Scutella received an Inmate Handbook notifying him of the prison's fee schedule, and this information was also posted on the inmate kiosks throughout the prison. ECF No. 20-2, ¶7. Scutella was charged the $50.00 processing fee upon his commitment to the facility. ECF No. 11, ¶3. *See also* ECF No. 20-5, pp. 15-17; ECF No. 20-7). Thereafter, he was charged the $10.00 "room and board" fee for each successive day he resided within the facility. *Id. See also* ECF No. 6-1.

The parties' versions of the facts differ somewhat regarding what transpired after Scutella requested a grievance form, although the parties apparently agree that he sought the form to contest the fees assessed against his prison account. Defendants assert that Scutella requested the grievance form from his prison counselor, Amber Chaffee, on May 21, 2019, and that, the following day, at Chaffee's request, Scutella clarified that it was his intent to grieve the fees assessed against his account as violating his rights against "cruel and unusual punishment and double jeopardy." ECF

No. 20-2, ¶¶14-15.  According to Defendants, Chaffee and Deputy Warden Ronald Bryant met with

Scutella that on May 22, 2019 to discuss his request for a grievance as part of the "informal"

resolution process included in the ECP's grievance procedures.  No. 20-2, ¶16.  Regarding this

process, the Inmate Handbook states:

> Initiation of Grievance
>
> - Once an inmate initiates the grievance process, review of the
>   grievance shall occur automatically without interference by
>   administrators or employees of the Erie County Department of
>   Corrections.
>
> - Forms: *Inmates should first attempt to verbally resolve grievances, incidents,
>   problems, or complaints through their pod counselor or other appropriate staff by
>   submitting a request via kiosk or paper request (RHU) that includes all
>   information pertinent to the alleged grievance.  If the problem cannot be resolved
>   informally, the inmate may file a standard written grievance within fifteen (15)
>   days after the potentially grievable event has occurred.*  The grievance should
>   be filed with the inmate's counselor first on a form provided for that
>   purpose. The forms are available in each housing unit from your
>   counselor (See Grievance Form).

ECF. No. 20-5, p. 44 (emphasis supplied).

Defendants assert that Scutella stated during the May 22, 2019 meeting that he "only wanted

to file a grievance for a Federal Lawsuit and the he 'likes doing paperwork'."  ECF No. 20-2, ¶16.

They further assert that Scutella complained about "housing fees" and "it was explained to him that

he could put in for reclass after 30 good days in GP and work in CC Pod to avoid those fees."  *Id.*

Defendants also assert that Scutella stated that he "understood and wished to [withdraw] his

requests for grievance."  *Id.*  Finally, Defendants assert that they "closed" Scutella's request for a

grievance form on May 23, 2019, and that thereafter Scutella did not raise any issue related to this

informal resolution of his request.  *Id.*, ¶17.  In contrast, Scutella alleges that Defendants denied him

a grievance form because his objection to the assessments against his prison account and his

complaint about the unavailability of grievance forms were "non-grievable."  ECF No. 11, ¶4.

ECP's Inmate Handbook specifically states, however, that the grievance process may be used to "[r]eport an alleged violation of civil, constitutional or statutory right." ECF. No. 20-5, p. 44.

IV.    Analysis

Scutella's Complaint asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. All arise out of ECP's withdrawing of administrative and service fees from Scutella's prisoner account or Defendants' failure to provide him with grievance forms. The Court will first address Scutella's First Amendment claim based on the alleged unavailability of grievance forms.

    A. Defendants' alleged denial of grievance forms did not violate Scutella's First
       Amendment Rights.

Scutella asserts that the Defendants' refusal to make grievance forms reasonably available to him violated his First Amendment "right to grievance and freedom of speech" and that the ECP's "policy and procedure" regarding grievances frustrated his ability to exhaust administrative remedies and thereby gain access to federal court. ECF No. 11, §V. Scutella's reference to exhaustion of administrative remedies derives from the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e. Under the PLRA, a prisoner must exhaust his administrative remedies with the correctional institution prior to filing suit. 42 U.S.C. § 1997e(a). The PLRA specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id. See also Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) ("Under the PLRA, exhaustion is a precondition for bringing suit under § 1983."). Accordingly, if a prisoner fails to exhaust available administrative remedies, such as a prison's grievance process, a defendant may raise that failure as an affirmative defense and seek

dismissal of the prisoner's lawsuit. *McPherson v. United States*, 392 Fed. Appx. 938, 943 (3d Cir. 2010).
Here, Scutella argues that the Defendants' failure to provide grievance forms prevented him from
exhausting his administrative remedies and thereby impeded his access to federal court and violated
his First Amendment rights.[3]

Scutella's position is fundamentally flawed on multiple levels. First, the PLRA requires only
"proper exhaustion," meaning exhaustion of those administrative remedies that are "available."
*Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Where prison officials
frustrate a prisoner's access to administrative remedies, those remedies will be considered
"unavailable" and "deemed exhausted," and the prisoner will be free to file suit in federal court.
*Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). In *Ross v. Blake*, the
Supreme Court identified "three kinds of circumstances in which an administrative remedy, although
officially on the books," is not "available" because it is "not capable of use to obtain relief": (1)
when "it operates as a simple dead end—with officers unable or consistently unwilling to provide
any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking,
incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison
administrators thwart inmates from taking advantage of a grievance process through machination,
misrepresentation, or intimidation." — U.S. —, 136 S.Ct. 1850, 1859-60, 195 L.Ed.2d 117 (2016).
In *Robinson*, the Court of Appeals for the Third Circuit held that the prison "rendered its
administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own procedural
rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on

---

[3] The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or
> abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition
> the Government for a redress of grievances.

U.S. Const. amend I.

his claim." 831 F.3d at 154.  In such circumstances, "filing suit [was the plaintiff's] only method to advance his claim."  *Id.*  In the present case, Defendants' denial of a grievance form would similarly result in the "unavailability" of administrative remedies.  *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  Such unavailability would not, as Scutella argues, impede his access to federal court, however.  Rather, it would result in his grievance remedy being "deemed exhausted" and free him to file his lawsuit without completing the grievance process.  *Id.*  This is precisely what he did in this case.

Second, because inmates "do not have a constitutionally protected right to a grievance process," *Jackson v. Gordon*, 145 Fed. Appx. 774, 777 (3d Cir. 2005), "allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 Fed. Appx. 457, 459 (3d Cir. 2015).  The PLRA requires inmates to exhaust any available administrative remedies prior to filing cases in federal court, but it does not mandate that prisons provide inmates with grievance procedures.  42 U.S.C. §§ 1997e(a)–(b).  Therefore, the denial of a grievance form alone "does not give rise to a constitutional claim." *Payton v. Grote*, 2014 WL 4553203, at *8 (N.D. Ill. Sep. 15, 2014).  *See also Massey v. Helman,* 259 F.3d 641, 647 (7th Cir. 2001) (Prison grievance procedures "do not in and of themselves create cognizable liberty or property interests."); *Jones v. Hardy*, No. 11 C 699, 2012 WL 1133797, at *4 (N.D. Ill. Apr. 4, 2012) ("[T]he lack of a grievance system or the failure of prison officials to adhere to a prison's grievance procedures does not give rise to a separate civil rights claim."); *Flanagan v. Shively*, 783 F.Supp. 922, 931–32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992) (inmates cannot sustain a § 1983 claim based on officials' "failure … to provide a favorable response to an inmate grievance."); *Alexander v. Rozum*, 2014 WL 3700856, at *7 (M.D. Pa. July 25, 2014) ("[D]issatisfaction with the response to an inmate's grievances does not support a constitutional claim.").

Neither federal constitutional nor statutory law granted Scutella a right to a grievance process at the ECP. Therefore, although the Defendants' alleged failure to provide grievance forms to Scutella may have excused his obligation to exhaust administrative remedies before filing suit, it did not give rise to an independent cause of action against the Defendants. Accordingly, the Court will grant Defendants' motion to dismiss as it relates to their alleged denial of grievance forms.

      B.  The fees charged by the ECP did not violate the Eighth Amendment.

The Eighth Amendment to the Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amen. VIII; *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417 n. 7 (3d Cir.2000). The Eighth Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id. (quoting Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). The prohibition on excessive fines "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"[4] *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314 (1998) (citing *Austin v. United States*, 509 U.S. 602, 609–610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993)). "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.'" *Tillman*, 221 F.3d at 420 (citing *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 2033, 2036, 141 L.Ed.2d 314 (1998)). In this context, "'fine' refers to punishment for a

---

[4] Scutella casts his Eighth Amendment claim under the "cruel and unusual punishments" clause of the Eighth Amendment. However, he does not allege that he was denied adequate food, clothing, shelter, medical care, or a reasonably safe environment during his incarceration at the ECP. Upon closer scrutiny, it is apparent that Scutella's Eighth Amendment claim is more properly analyzed under the "excessive fines" clause of the Amendment.

criminal offense." *Id.* (citing *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)).

In *Tillman*, the Court of Appeals for the Third Circuit evaluated a program like Erie County's and held that charging inmates flat per diem fees did not per se violate the Eighth Amendment. *Tillman*, 221 F.3d at 413. *Tillman* involved a challenge to a $10 per diem housing fee assessed inmates at the Lebanon County Prison. *Id.* The Court held that as long as the provision of a humane environment, adequate food, clothing and shelter, medical care and the reasonable measures to guarantee an inmate's safety were not contingent on an inmate's ability to pay for these services, it was permissible for prison authorities to "seek reimbursement from the party receiving the benefit of [this] care." *Id.* at 418–419; *see also Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir.1997). The Court determined that the fees at issue in that case were not a "fine" within the meaning of the Eighth Amendment because a "prisoner's term of incarceration [could not] be extended, nor [could] he be reincarcerated, for failure to pay a negative balance," and "[t]he daily fees [did] not vary with the gravity of the offense and [could] neither be increased nor waived." *Id.* "More fundamentally," the Court reasoned, "the fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Id.* (footnote omitted). The Court also emphasized that, unlike punitive fines, the fees charged by the Lebanon County Prison were part of a rehabilitation and responsibility program that helped teach inmates financial responsibility. *Id.* at 420. Only if the fees could "'be explained as serving in part to punish,'" are they considered "'punishment' for purposes of the Excessive Fines Clause…". *Id.* (quoting *Austin*, 509 U.S. at 610, 620–21, 113 S.Ct. at 2805–06, 2811–12). That was not the case in *Tillman*. Nor is it the case here.

The fees assessed by ECP are modest relative to the administrative and direct costs incurred by it to board, feed and provide services to inmates.[5] The fees are uniform and do not increase based on the offense of which the inmate is accused or convicted. Erie County Ordinance No. 83, 2014 provides that "[i]nmates shall never be denied medical care for any reason" (ECF No. 20-4), and Scutella does not allege that ECP denies any services based upon an inmate's inability to pay the service or administration fees. Although the Ordinance does not state its legislative purpose, its similarity to the program scrutinized in *Tillman* supports the conclusion that it serves a comparable rehabilitative function—i.e., teaching inmates financial responsibility. Scutella's Amended Complaint alleges no facts to support an inference that the fees assessed by ECP serve in part to punish inmates. Therefore, like the fees at issue in *Tillman,* the ECP's fees do not violate the Excessive Fines Clause of the Eighth Amendment. Accordingly, Defendants' motion will be granted as to this claim.

    C. The fees charged by the ECP did not violate the Double Jeopardy Clause of the Fifth Amendment.

Scutella argues that Defendants' assessment of "room and board" fees also violated the Double Jeopardy Clause of the Fifth Amendment, which is applicable to the States through the Fourteenth Amendment. This claim is frivolous. The Double Jeopardy Clause prohibits anyone from being prosecuted twice for substantially the same crime and states in relevant part, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend V. The ECP's assessing of fees in no way subjected Scutella to a second prosecution for the

---

[5] The fees are also modest relative to the fines authorized under Pennsylvania law for the offense of which Scutella was convicted. Scutella was convicted under 35 Pa. Stat. § 780-113(a)(30). ECF No. 20-3. This statutory offense prohibits, among other things, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act" and is punishable by up to 10 years' imprisonment and a fine ranging between $5,000 and $100,000 depending on the nature and amount of the controlled substance involved. 35 Pa. Stat. § 780-113(f)(1.1).

same offense. *See Newson v. Highlands Cty. Jail*, 2009 WL 1515093, at *1 (S.D. Fla. May 29, 2009).

The Defendants' motion also will be granted as to this claim.

     D.  The fees charged by the ECP did not violate Scutella's due process rights.

Scutella further asserts that the ECP's assessment of fees without a pre-deprivation hearing

violates his Fourteenth Amendment due process rights: "I have not agreed to this nor did I have a

formal hearing or notification." ECF No. 11, §V.  Unquestionably, Scutella had a protectable

"property interest" in his prison account. *Tillman*, 221 F.3d at 421.  But this is only the beginning of

the analysis.  Due process "'is flexible and calls for such procedural protections as the particular

situation demands'" in order to "minimiz[e] the risk of error."  *Id.* (quoting *Greenholtz v. Inmates of the

Nebraska Penal and Corr. Complex*, 442 U.S. 1, 12–13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (internal

quotation omitted)).  "The amount of notice due depends on the context."  *Reynolds*, 128 F.3d at 179

(citing *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997)).  Not all takings

of property by the State require predeprivation notice and a hearing.  *Tillman*, 221 F.3d at 421 (citing

*Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other gds.,

*Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).  "[W]here the State must

take quick action, or where it is impractical to provide meaningful predeprivation process, due

process will be satisfied by a meaningful postdeprivation remedy."  *Id.* (citing *Parratt*, 451 U.S. at 539,

101 S.Ct. 1908).  "In such cases, the normal predeprivation notice and opportunity to be heard is

pretermitted if the State provides a postdeprivation remedy."  *Id.* (quoting *Parratt*, 451 U.S. at 538,

101 S.Ct. 1908) (internal quotation marks omitted).

In *Tillman*, the Court of Appeals rejected a due process challenge similar to Scutella's and

held that the postdeprivation grievance process provided by the Lebanon County Prison satisfied

due process requirements.  The Court observed:

> It is impractical to expect the prison to provide predeprivation proceedings under these circumstances. As the takings and assessments pass substantive constitutional muster, we only need ask whether the attendant procedure is also constitutionally adequate. It is. The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error. To the extent that mistakes such as erroneous assessments or incorrect takings might occur, they may be corrected through the prison's grievance program without any undue burden on a prisoners' rights. On the other hand, to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the county's costs of incarcerating prisoners.

221 F.3d at 422 (footnote omitted).

The Court also found that the Lebanon County Jail's posting of its "Cost Recovery Program" in the plaintiff's cellblock and the inclusion of that program and the Jail's grievance process in the handbook it provided to each inmate satisfied the "notice" requirements of due process. *Id.* The Court explained:

> The plaintiff had adequate notice of the grievance program and of the Cost Recovery Program. Upon confinement in January of 1997, notice of the Cost Recovery Program and a copy of it were still posted in the plaintiff's cell block. Also, Tillman was given a handbook, which described the prison grievance procedure. When the handbook was updated to include the Cost Recovery Program and an expanded grievance procedure, the plaintiff was given a copy of that as well. He was given an additional copy of the handbook upon reconfinement in October of 1997. The grievance program allowed prisoners to complain about "any" matter that is "unjust," and as updated, also provided for direct appeal to the warden.

*Id.*

In the present case, the ECP maintained a grievance process that permitted him to "[r]eport an alleged violation of civil, constitutional or statutory right." ECF. No. 20-5, p. 44. In addition, Scutella was provided with copies of the ECP's fee schedule and its grievance process in paper or electronic postings and through the ECP Inmate Handbook. *See* ECF No. 20-2. ¶¶, 6-12; ECF No.

20-5.  The notice and process approved in *Tillman* and the notice and process described in the ECP's postings and handbook are materially similar.  Given this, rejection of Scutella's due process claim would appear to be in order.  This case, however, involves one potentially distinguishing fact.  The Defendants are alleged to have denied Scutella the postdeprivation grievance remedy promised him in the Inmate Handbook.  According to Scutella's Amended Complaint, the Defendants told him the validity of the administrative and "room and board" fees was "non-grievable."  *See* ECF No. 20-5, p.44.  Defendants, on the other hand, assert that Scutella "withdrew" his request for a grievance form after he conferred with Defendants Chaffee and Bryant as part of the "informal" dispute resolution process described in grievance policy.  ECF No. 20-2, ¶16.  Unlike Scutella's allegations, however, Defendants' factual assertion is contained in a sworn affidavit submitted in support of their motion for summary judgment.  *Id.*  Because Scutella has not controverted this factual assertion, the Court must consider it "undisputed" for purposes of the pending motion.  Given this, informal discussions between Scutella and Defendants Chaffee and Bryant were consistent with the ECP's grievance process, as was Scutella's withdrawal of his request for a grievance form following those discussion.  Even accepting Scutella' allegation that Chaffee initially told him his objection to the fees was "non-grievable," the fact remains that the objection proceeded according to the informal dispute resolution process outlined in the Inmate Handbook and was ultimately resolved.  Thus, the Court concludes that Scutella was not denied his postdeprivation remedy and that Defendants did not deny him the process he was due under the Fourteenth Amendment.[6]

---

[6] If the Court were to have found a violation of Scutella's due process rights based upon incorrect information allegedly provided by Chaffee, such a violation would have entitled Scutella, at most, to nominal damages of $1.00.  Scutella did not sustain any compensatory damages because, as explained in this Opinion, the ECP's charging of administrative and service fees to Scutella's prison account did not violate any right secured by the Constitution or federal statutory law. Because Scutella is no longer incarcerated at the ECP, he also would not be entitled to injunctive relief.

V.  Conclusion

Defendants' motion to dismiss or, alternatively, for summary judgment will be granted.[7]  No

genuine issue of material fact remains for trial, and Defendants are entitled to judgment as a matter

of law.  An appropriate Order follows.

### ORDER

At Erie, Pennsylvania this 8th day of September, 2020:

For the reasons stated in the foregoing Memorandum Opinion issued this date, **IT IS**

**HEREBY ORDERED** that Defendants Erie County Prison, Amber Chaffee, and Ronald Bryant's

Motion to Dismiss and, alternatively, for Summary Judgment (ECF No. 20) is **GRANTED.**  The

Clerk of the Court is directed to enter judgment for the Defendants in accordance with Fed. R. Civ.

Pro. 58.

RICHARD A. LANZILLO
United States Magistrate Judge

---

[7] Defendants also argue that the ECP is not a "person" and, therefore, cannot be held liable for constitutional violations through § 1983.  *See Scutella v. Erie Cty. Prison*, No. 1:19-CV-245, 2020 WL 4904587, at *6 (W.D. Pa. Aug. 20, 2020) (holding that ECP is not a "person" for purposes of §1983); *Barnes v. Erie Cty. Prison Admin.*, 2020 WL 4450297, at *3 (W.D. Pa. Aug. 3, 2020) (citing *Lenhart v. Pennsylvania*, 528 Fed. Appx 111, 114 (3d Cir. 2013)) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability [, the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted).  Given the foregoing analysis and determination, the Court need not reach this argument or the other arguments raised by Defendants.